FILED
2011 Jun-09  AM 11:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WANDA DILLARD** and **SAMUEL BRYAN DILLARD**, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**CAPITAL ONE BANK (USA), N.A.**,<br><br>Defendant. | CIVIL ACTION NUMBER:<br><br>_____ |

## CLASS ACTION COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiffs Wanda Dillard and Samuel Bryan Dillard, for themselves and all others similarly situated, bring this action for violations by defendant Capital One Bank (USA), N.A., of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, in connection with (a) unlawful fees charged credit card customers for paying by mail or other non-electronic methods; and (b) unlawful "late payment fees" charged credit card customers because of the defendant's inordinate, undue, unjustified, and unlawful delay in posting credit card customers' payments, which results in the said customers' payments being credited to their accounts after the due date, with resulting "late fee" charges and the defendant's

right to increase their customers' credit card interest rates because of these purported late payments, per section 202 of the Credit Card Accountability, Responsibility and Disclosure Act of 2009 ("Credit CARD Act"), 123 Stat. 1734 (2009).

Plaintiffs aver on their behalf and on behalf of the Class of persons they seek to represent that all of the foregoing improper and illegal practices of said defendant violate the Credit CARD Act and its implementing regulations. Plaintiffs, for themselves and all others similarly situated, allege that the said practices of said defendant violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*., and, therefore, seek appropriate declaratory, injunctive and other equitable relief, actual and treble damages, and attorneys' fees, litigation expenses and costs.

## PARTIES AND OTHER PARTICIPANTS

1.    Plaintiffs Wanda Dillard and Samuel Bryan Dillard are resident citizens of Blount County, Alabama, within this judicial district, and are over the age of 21 years.  At all times relevant to this complaint, plaintiffs Wanda Dillard and Samuel Bryan Dillard jointly held a Capital One Platinum MasterCard credit card issued by defendant Capital One Bank (USA), N.A.

2.    Defendant Capital One Bank (USA), N.A. ("COBNA"), is a national banking association chartered under the laws of the United States with its principal

place of business in McLean, Virginia, outside this judicial district.  Since February 2008, COBNA has been considered a "limited purpose bank" due to its limited product line of offered banking products.  COBNA's principal business comprises issuing, marketing and servicing credit and debit cards and the attendant consumer loans.

3.  Through its conduct, defendant COBNA participated, directly or indirectly, in the affairs of an enterprise, namely Capital One Financial Corporation, through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

4.  Capital One Financial Corporation ("COF") is a publicly-held and traded corporation organized and operating as a diversified financial holding company that specializes in issuing and servicing not only credit cards, but also home loans and auto loans, and provides banking and savings products. COF is organized and exists under the laws of the State of Delaware, with its principal place of business in McLean, Virginia, outside this judicial district.

## JURISDICTION AND VENUE

5.  This Court has subject-matter jurisdiction of this action pursuant to 18 U.S.C. § 1965(a), and 28 U.S.C. § 1331.  Defendant COBNA is subject to personal jurisdiction in this district because it transacts and engages in continuous,

and not isolated, business in Alabama, and the wrongs described in this complaint were committed in Alabama and elsewhere.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the wrongful acts or events upon which the plaintiffs' claims are based were committed in this district, and a part of the same type wrongful acts or events giving rise to the claims of the Class nationwide.

## THE SCHEME

7. The Credit Card Accountability Responsibility and Disclosure Act of 2009 ("Credit CARD Act"), P.L. 111-24, 123 Stat. 1734 (May 22, 2009), and its implementing regulations provide substantial new rights and protections for credit card holders, including the plaintiffs and class members.

8. Particularly, as relevant to this action, § 164 of the Credit CARD Act, as codified at 15 U.S.C. §1666c(a), provides as follows:

> Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form, by 5:00 p.m. on the date on which such payment is due, in the amount, manner, and location indicated by the creditor to avoid the imposition thereof.

9. Pursuant to 15 U.S.C. § 1666c(a), the Federal Reserve Board amended Regulation Z dealing with late fees, codified at 12 C.F.R. § 226.10 (eff. Feb. 22, 2010), to provide as follows:

(a) A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge or except as provided in paragraph (b) of this section.

(b) Specific requirements for payments.

(1) General rule. A creditor may specify reasonable requirements for payments that enable most consumers to make conforming payments.

(2) Examples of reasonable requirements for payments. Reasonable requirements for making payment may include:

(i) Requiring that payments be accompanied by the account number or payment stub;

(ii) Setting reasonable cut-off times for payments to be received by mail, by electronic means, by telephone, and in person (except as provided in paragraph (b)(3) of this section), provided that such cut-off times shall be no earlier than 5 p.m. on the payment due date at the location specified by the creditor for the receipt of such payments;

(iii) Specifying that only checks or money orders should be sent by mail;

(iv) Specifying that payment is to be made in U.S. dollars; or

(v) Specifying one particular address for receiving payments, such as a post office box.

\* \* \*

(e) Limitations on fees related to method of payment. For credit card accounts under an open-end (not home-secured) consumer credit plan, a creditor may not impose a separate fee to allow consumers to make a payment by any method, such as mail, electronic, or telephone payments, unless such payment method involves an expedited service by a customer service representative of the creditor.

10. In order to unlawfully and wrongfully increase defendant's income at the expense of its credit card holders by avoiding the impact of the highly restrictive rules established by the 2009 Credit CARD Act and its implementing

regulations, defendant concocted and conceived a calculated and designed two-pronged scheme and artifice to defraud its credit card customers, including plaintiffs and the class, as follows:

(a).    Defendant charged its customers a fee (generally $1.00 per transaction) if the customer's payment was made by mail or by other non-electronic means, despite the fact that defendant offered no expedited payment processing service for that fee, in violation of 12 C.F.R. § 226.10(e); and

(b).    Defendant charged its credit card customers late fees on credit card payments when the payments were made and received in a timely manner by defendant but were not posted to the credit card holders' accounts until after the due date for such payment, in violation of 15 U.S.C. § 1666c(a) and 12 C.F.R. § 226.10 (a), and defendant's fraudulent scheme also included claiming that the bogus "late payments" justified an increase of card members' interest rates on both new purchases and existing credit card balances up to the "penalty rate" of 29.4 percent.

11.    This was and is a calculated scheme by the defendant, which used and uses the mails and/or interstate wire communications, including the Internet, to transmit monthly billing statements to its credit card holders, and require the credit card holders to use the mails and/or interstate wire communication, including the Internet, to pay to defendant the unlawful and improper late payment fees and

other improper charges, in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).

12.     The monies, in the form of unlawful and improper late payment fees and unlawful non-electronic transaction fees, generated by the defendant's fraudulent scheme and the pattern of racketeering activity by which that scheme was implemented, were funneled, in whole or in part, to COF and were reported by COF to its shareholders, the federal Securities and Exchange Commission , the Comptroller of the Currency, and other state and federal regulators by COF as a part of its income and earnings.

## FACTS RELATING TO THE PLAINTIFFS

13.     Plaintiffs Wanda Dillard and Samuel Bryan Dillard are and have been since 2003 holders of a MasterCard Platinum credit card issued by defendant COBNA.

14.     On plaintiff's monthly billing statement from defendant COBNA for the period August 14 through September 13, 2010, plaintiffs were required to send a minimum payment of $171.00 to defendant COBNA, at its address shown on the statement, so that said payment was received by defendant COBNA not later than October 10, 2010.

15. On or about September 29, 2010, plaintiffs mailed a check for $171.00 in payment of the said monthly credit card bill to defendant COBNA at the address shown on the said statement.

16. Plaintiffs' said payment was received by defendant COBNA on October 1, 2010.

17. In spite of plaintiffs' payment being received by defendant COBNA on October 1, 2010, which was not due until October 10, 2010, the due date, defendant COBNA did not post this October 1, 2010, payment until October 13, 2010, and the defendant, based upon this purported and contrived late payment, imposed a $25.00 "late payment fee" on October 13, 2010, and further unlawfully charged plaintiffs a $1.00 fee for making plaintiffs' payment by mail instead of electronically.

## CLASS ACTION ALLEGATIONS

18. Plaintiffs seek certification under the provisions of Fed.R. Civ.P. 23(a), 23(b)(1), 23(b)(2) and 23(b)(3), on behalf of a Class consisting of three subclasses preliminarily defined as follows:

**Late Fees Subclass**

> All persons with credit cards issued by Capital One Bank (USA), N.A., who, after the effective date of the 2009 Credit CARD Act, were charged one or more "late payment fees" on payments received by Capital One Bank (USA), N.A., before the due date but not posted by Capital One Bank (USA),N.A., until after the due date.

**Mail Payment Subclass**

> All persons with credit cards issued by Capital One Bank (USA), N.A., who, after the effective date of the 2009 Credit CARD Act, were charged one or more fees by Capital One Bank (USA), N.A., because their credit card payments were made by mail or other non-electronic methods.

**Interest Rate Increase Based on Bogus Late Fee Payments Subclass**

> All persons with credit cards issued by Capital One Bank (USA), N.A., who after the effective date of the 2009 Credit CARD Act, were subjected to an actual or threatened credit card interest rate increase because they were charged one or more "late payment fees" on payments received by Capital One Bank (USA), N.A., before the due date but not posted by Capital One Bank (USA),N.A., until after the due date.

19. The Class satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

20. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members can be determined only by appropriate discovery, plaintiffs believe that members of the Class numbers in the many thousands of persons, disbursed throughout the United States.

21. Because of the geographic dispersion of Class embers, there is judicial economy arising from the avoidance of a multiplicity of actions in trying this matter as a class action.

22. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests that are adverse or antagonistic to those of the

9

Class. Plaintiffs' interests are to obtain relief for themselves and the Class for the harm arising out of the common methods, acts, practices and conduct alleged herein.

23. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in complex and consumer class action litigation.

24. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying verdicts and adjudications, which would establish incompatible standards of conduct for the defendant.

25. Adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

26. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making final injunctive and declaratory relief appropriate to enjoin and cease defendants' unlawful and inequitable practices.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by each member of the Class are relatively small, the expense and burden of individual litigation make it virtually impossible for plaintiffs and members of the Class to

individually seek redress for the wrongful conduct alleged.

28. Common questions of law and fact exist as to all members of the Class and the common questions predominate over any questions affecting solely individual members of the Class. Among the questions of law and facts common to the Class are the following:

(a). Whether defendant charged its customers a fee if the customer's payment was made by mail or by other non-electronic means, despite the fact that defendant offered no expedited payment processing service for that fee, in violation of 12 C.F.R. § 226.10(e);

(b). Whether defendant charged its credit card customers late fees on credit card payments when the payments were made and received in a timely manner by defendant but were not posted to the credit card holders' accounts until after the due date for such payment, in violation of 15 U.S.C. § 1666c(a) and 12 C.F.R. § 226.10 (a);

(c). Whether defendant increased or threatened to increase the credit card interest rates of its customers based upon late credit card payments when the payments were made and received in a timely manner by defendant but were not posted to the credit card holders' accounts until after the due date for such payment, in violation of 15 U.S.C. § 1666c(a) and 12 C.F.R. § 226.10 (a);

(d).     Whether defendant's conduct with respect to the Class as a whole violated 18 U.S.C. § 1962(c);

(e).     Whether the Class is entitled to injunctive or other equitable relief , pursuant to RICO, the Declaratory Judgment Act, or otherwise, to remedy defendant's past and continuing violations of law alleged herein;

(f).     Whether this Court should find, hold and declare, pursuant to the Declaratory Judgment Act, that defendant's methods, acts, practices and conduct are unlawful or inequitable;

(g).     Whether the Class is entitled to actual and treble damages.

29.     The Classes are readily definable from the defendant's own records, and prosecution of this action as a class action will reduce the possibility or repetitious litigation and will promote and advance judicial economy.

30.     Plaintiffs and their counsel know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

### **COUNT ONE**

### **Violation of 18 U.S.C. § 1962(c)**

31.     Plaintiffs reallege each and every material allegation of the preceding paragraphs of this complaint, and incorporate same by reference into this Count I as if here set out in full.

32. Each plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).33.  COF is an enterprise within the meaning of 18 U.S.C. §1961(4).

33. Defendant COBNA is a person within the meaning of 18 U.S.C. § 1961(3).

34. COF is was and is engaged in, and is activities affect, interstate and foreign commerce, within the meaning of 18 U.S.C. §1962 (c).

35. At all times relevant to this complaint, defendant COBNA associated with the enterprise (COF) and conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise (COF) through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(c).

36. In order to unlawfully and wrongfully increase defendant's income at the expense of its credit card holders by avoiding the impact of the highly restrictive rules established by the Credit CARD Act and its implementing regulations, defendant concocted and conceived a calculated and designed two-pronged scheme and artifice to defraud its credit card customers, including plaintiffs and the class, as follows:

    (a). Defendant charged its customers a fee (generally $1.00 per transaction) if the customer's payment was made by mail or by other non-

electronic means, despite the fact that defendant offered no expedited payment processing service for that fee, in violation of 12 C.F.R. § 226.10(e); and

(b). Defendant charged its credit card customers late fees on credit card payments when the payments were made and received in a timely manner by defendant but were not posted to the credit card holders' accounts until after the due date for such payment, in violation of 15 U.S.C. § 1666c(a) and 12 C.F.R. § 226.10 (a), and defendant further planned and intended to use those ostensibly "late payments" to unjustifiably increase card members' interest rates on both new purchases and existing credit card balances up to the "penalty rate" of 29.4 percent.

37. At all relevant times, in furtherance and implementation of the said fraudulent scheme, defendant COBNA engaged in racketeering activity within the meaning of 18 U.S.C. §1961(1), and specifically mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343, by transmitting Class members' monthly credit card billing statements and other documents by United States mail and/or interstate wire transmission, specifically via the Internet, with the intention and expectation that Class members would use the United States mail and/or interstate wire transmission, specifically the Internet or interstate telephone system, to pay their monthly credit card payments, and the unlawfully imposed "late fees" and the unlawfully imposed fees if the customer's payment was made by mail or by other non-electronic means.

38. Use of the mails and/or interstate wire transmission by both defendant and the members of the Class was integral to the defendant's fraudulent scheme, and constitutes the vehicle by means of which the fraudulent scheme was implemented.

39. Defendant committed two or more of two or more of these acts of racketeering activity in that the said acts were committed against each member of the Class defined herein and multiple times against some Class members.

40. The acts of racketeering activity committed by defendant COBNA constituted a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5). The acts alleged were related to each other in that they were all committed by defendant COBNA against its credit card holders (the members of the class herein), involved a common method of commission, and the common purpose and common result of defrauding by virtue of common participants (defendant COBNA), a common victim (the class defined herein). On information and belief, the fraudulent scheme has been in existence and operation since at least 2010 and continues to the date of this complaint.

41. As a direct and proximate result and consequence of defendant COBNA's violation of 18 U.S.C. §1962(c), plaintiff and the members of the class have been injured and damaged in their property in that they have paid to

defendant COBNA unlawfully and improperly imposed "late payment fees" and/or fees for transactions conducted by means other than electronically.

## COUNT TWO

### Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

42. Plaintiffs reallege each and every material allegation of the preceding paragraphs of this complaint, and incorporate same by reference into this Count Two as if here set out in full.

43. Pursuant to 28 U.S.C. § 2201, this Court should find, hold and declare that the defendant's scheme, methods, acts, practices and conduct as alleged and described in this complaint are unlawful and inequitable.

44. Based upon said declaration, the Class is entitled to injunctive or other equitable relief to remedy defendant's past and continuing violations of law alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, for themselves and all others similarly situated, demands judgment against defendant Capital One Bank (USA), N.A., as follows:

A. An order certifying this action as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and 23(b)(3), designating plaintiffs Wanda Dillard and Samuel Bryan Dillard as class representatives, and appointing their undersigned counsel as Class Counsel;

B. The Court's declaratory judgment that the defendant's scheme, methods, acts, practices and conduct as alleged and describe in this complaint are unlawful and inequitable;

C. Permanently enjoining defendant from engaging in the wrongful scheme and conduct herein alleged;

D. Ordering that the defendant make restitution and/or disgorge into a common fund or a constructive trust all monies paid by plaintiff and the Class to the full extent of the defendant's ill-gotten gains from its unlawful and/or inequitable conduct alleged herein, together with interest thereon;

E. All other necessary, appropriate and proper final injunctive and other equitable relief to which the Class is entitled to remedy the defendant's past and continuing violations of law as herein alleged;

F. Awarding actual and treble damages;

G. Granting to plaintiffs an award of attorneys' fees, and litigation expenses and costs;

H. Granting to plaintiff and the Class all other equitable and legal relief to which they are entitled in the circumstances.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues in this cause properly triable thereby.

/s/  **Lanny S. Vines**_____
LANNY S. VINES
Alabama Bar No. ASB-8314-I50L
(lvines@lannyvines.com)
Attorney for Plaintiff

LANNY VINES & ASSOCIATES, LLC
2142 Highland Avenue South
Birmingham, Alabama 35205
Telephone (205) 933-1277
Facsimile (205) 933-1272

### REQUEST FOR SERVICE BY CERTIFIED MAIL

Plaintiffs request service of the Summons and Complaint by certified mail .

/s/  **Lanny S. Vines**_____
LANNY S. VINES

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

**CAPITAL ONE BANK (USA), N.A.**
c/o CSC Lawyers Incorporating Service, Inc., Registered Agent
150 South Perry Street
Montgomery, Alabama 36104